Myers, J.
 

 The question to be determined is whether all the funds represented by the certificates of deposit in The Sunbury Savings
 
 So
 
 Loan Company belong to John W. Fulk, surviving husband, individually, or one-half to the estate of Ida B. Fulk, deceased. In arriving at its conclusion the Court of Appeals considered certain parol testimony of Dwight C. Hoover,
 
 *235
 
 secretary of The Sunbury Savings & Loan Company, who prepared and executed the certificates of deposit in the name of John or Ida Fulk. The husband, John W. Fulk, also testified in the Probate Court and Court of Common Pleas in respect to the arrangements had at the time the deposits were made, but the Court of Appeals questioned the competency of such evidence under Section 11495, General Code.
 

 A joint deposit of funds may be made in different ways. The deposit may be one of joint earnings by husband and wife, as in the instant ease, or the funds may have been owned and in the name of the husband alone and later the name of the wife or another added either for the purpose of a gift or as a matter of convenience. Other situations may arise where a present joint or other interest is created.
 

 Are such contracts of deposit to be placed on the same basis with reference to parol testimony as contracts made between strangers? Such contracts are frequently made between members of the same family. They are not made at arms length as are contracts between strangers. Such contracts are frequently made with no thought of adverse proceedings thereafter and consequently without the use of technical legal terms to protect the rights of the parties in certain contingencies. In addition, such contracts of deposit are unusually short, sometimes the only documentary clue to ownership being a disjunctive “or” as in the instant case. There is not present, therefore, the element of more careful consideration and preparation usually attendant where contracts are made between strangers.
 

 There is another element to be considered in the interpretation of such contracts, especially in proceedings like the present, where exceptions were filed to the inventory in the Probate Court. Such a proceeding is primarily an inquiry into the ownership of and title to property. Although in this appeal we are
 
 *236
 
 concerned only with exception No. 18, there were, for example, 32 different exceptions to the inventory filed in the Probate Court. The items included all kinds of farm products — corn, wheat, hay and oats, chickens, horses and cattle. The administrator claimed these as his own individual property. How could the Probate Court properly determine the ownership of these various items of property without making inquiry of the persons who actually knew about the circumstances ? If it be thus necessary to make inquiry about the items of personal property on the farm, might it not also be necessary to make such inquiry where there is a simple joint deposit in a bank with only the word “or” as a guide to ownership, as in the instant case?
 

 The word “or” in the instant contract does not furnish us with the full intentions of John and Ida Fulk when they deposited their money in The Sunbury Savings & Loan Company. With only the word “or” the contract is vague and ambiguous. We are able to conclude what their real intentions were only when we learn that these funds were the joint earnings and savings of a long married life. Furthermore, the secretary of the loan company testified he told John and Ida Fulk, at the time the deposits were made, that if the word “or” were used in the certificates of deposit and thereafter one of them died the funds would belong to the survivor. Later John Fulk testified to the same effect. In the construction of a contract words are usually to be limited to their ordinary every day meaning but if the parties making the contract agree that the words used shall have some additional or other meaning, the same may be shown by parol testimony.
 
 Quarry Co.
 
 v.
 
 Clements,
 
 38 Ohio St., 587, 43 Am. Rep., 442;
 
 Courtright
 
 v.
 
 Scrimger,
 
 110 Ohio St., 547, 144 N. E., 294.
 

 Here was a simple contract of deposit not made between strangers. Beyond peradventure, when John and Ida Fulk deposited their money in that joint
 
 *237
 
 account, they thoroughly trusted each other in life. While both lived either could have withdrawn the entire amount. That being true, did they not so intend to trust each other even in the event of death of one or the other? There is nothing in the record to the contrary. During the life of both, the account was payable in full to either John or Ida Fulk. Did the death of one cut off or modify the right of the other? The
 
 right of withdrawal
 
 of the full amount by either was definitely established by the contract of deposit at the time it was made. Could the death of either abrogate that contractual right? As the Court of Appeals pointed out, we do not here have the question of a gift. With few exceptions, in the case of a contract between strangers the contractual rights survive death. Why not also here where there is a deposit of joint earnings by husband and wife joined and living together for more than fifty years under a marriage contract? In such a situation it is but natural to presume that the right of withdrawal survives.
 

 It has been held that where the word “or” is used in an account of husband and wife who earned and deposited money jointly, there is a presumption that upon the death of one, the fund will belong to the other. Before the
 
 prima facie
 
 title can be destroyed there must be a finding that the opening or changing of the account was for some other purpose. 7 American Jurisprudence, 302, Section 428. The foregoing appears to be the rule in New York state.
 
 West
 
 v.
 
 McCullough,
 
 123 App. Div., 846, 108 N. Y. Supp., 493 (affirmed by Court of Appeals, 194 N. Y., 518, 87 N. E., 1130). But in the same jurisdiction it was held that when a person deposits his money in a savings bank jointly in his name “or” another, not his .wife, the presumption is that it was done only for the purpose of convenience.
 
 In Matter of Bolin,
 
 136 N. Y., 177, 32 N. E., 626. We do not rest our decision upon such
 
 *238
 
 presumption alone but refer to the cases cited only as an aid to the interpretation of the contract here involved.
 

 In the case of
 
 In re Estate of Hutchison,
 
 120 Ohio St., 542, 166 N. E., 687, this court held that “While joint tenancy with the incidental right of survivorship does not exist in Ohio parties may nevertheless contract for a joint ownership with the right of survivor-ship and at the death of one of the joint owners the survivor succeeds to the title to the entire interest, not upon the principle of survivorship as an incident to the joint tenancy but by the operative provisions of the contract.”
 

 In
 
 Bender
 
 v.
 
 Cleveland Trust Co.,
 
 123 Ohio St., 588, 176 N. E., 452, the operative facts were different from those in the instant case. In that case the husband deposited his own money in his own name in a savings account, and thereafter arranged with the bank that his wife should also have the right to make withdrawals. The question in that case was whether there had been such a delivery as to pass the property as a gift. There was not a contract of deposit of mutual funds. The court held that the arrangement was merely a matter of convenience for withdrawing funds because of illness.
 

 This court has recently decided the case of
 
 Sage, Exr.,
 
 v.
 
 Flueck,
 
 132 Ohio St., 377, 7 N. E. (2d), 802, but in that case, as well as in the case of
 
 Cleveland Trust Co.
 
 v.
 
 Scobie, Admr.,
 
 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182, the contracts of deposit contained words of survivorship. In the
 
 Scobie case
 
 the passbook contained the following entry: “ ‘Either may draw — balance at death of either payable to survivor.’ ” In the case of
 
 Sage, Exr.,
 
 v.
 
 Flueck,
 
 the signature card accepted by the bank, which was signed by the three joint depositors, contained the words “payable to either or the survivor.” The passbook also carried the same words. The primary objective
 
 *239
 
 in such cases is to determine the real intention of the parties. For the most part each case must rest upon its own particular facts. In the instant case the im tention of the parties was not “clearly expressed” in their contract of deposit and by reason thereof the oral testimony of the secretary of the savings and loan company was admissible, not to vary the terms of the contract but to explain its ambiguity and the .circumstances under which it was made.
 

 The issue here concerns not the bank but the contractual relationship of John and Ida Fulk with each other. The witness, Hoover, in addition to being the secretary of the savings and loan company, was also the agent of both John and Ida Fulk in the preparation of the contract of deposit made by them with each other. Since he was, therefore, the agent of Ida Fulk in the preparation of the contract and competent to testify, the subsequent testimony of John Fulk in regard to the same subject-matter was competent and admissible under paragraph 2 of Section 11495, General Code; not by virtue of being administrator
 
 (Tuck, Admr.,
 
 v.
 
 Nelson,
 
 62 N. H., 469, and
 
 Preble
 
 v.
 
 Preble,
 
 73 Me., 362) but by reason of the fact that Hoover, as agent of the' decedent, was competent to testify.
 
 Miller
 
 v.
 
 Wilson,
 
 126 Mo., 48, 28 S. W., 640;
 
 Clark
 
 v.
 
 Thias,
 
 173 Mo., 628, 73 S. W., 616;
 
 Jacquin
 
 v.
 
 Davidson,
 
 49 Ill., 82.
 

 The transaction was complete when the contract was made and the money deposited by John and Ida Fulk. The rights of the parties were fixed at that time.
 
 Chippendale, Admr.,
 
 v.
 
 North Adams Savings Bank,
 
 222 Mass., 499, 111 N. E., 371;
 
 Cleveland Trust Co.
 
 v.
 
 Scobie, Admr., supra; New Jersey Title Guarantee & Trust Co., Exr.,
 
 v.
 
 Archibald,
 
 91 N. J. Eq., 82, 108 A., 434;
 
 Kennedy
 
 v.
 
 McMurray,
 
 169 Cal., 287, 146 P., 647, Ann. Cas. 1916D, 515. John Fulk takes by virtue of the contract. He and Ida Fulk were joint promisees, each agreeing that the other could
 
 *240
 
 withdraw the entire amount. There was no question of a gift or of sufficient delivery of the
 
 res.
 
 We hold that upon the death of Ida Fulk the funds represented by the certificates of deposit belonged to the survivor John Fulk.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Matthias and Hart, Day, Zimmerman, JJ., concur. Williams,