Taft, J.
We recognize that, where deposit obligations such as those in the instant case have been *275 coupled with an additional obligation to pay to the survivor, such accounts have been frequently referred to as joint and survivorship accounts. However, the obligation of the bank was not to pay to the husband and the wife but to either the husband or the wife. Such language apparently expresses no intention to create joint as distinguished from alternative several rights. See 2 Williston on Contracts (Rev. Ed.), 934, 945, 946, Sections 321, 325. Therefore, throughout this opinion, we will refrain from referring to these accounts as joint accounts.
Since Section 710-120, General Code, was enacted solely for the benefit and protection of banks (see Union Properties, Inc., v. Cleveland Trust Co., 152 Ohio St., 430, 433, 89 N. E. [2d], 638, and Nichols v. Metropolitan Life Ins. Co., 137 Ohio St., 542, 544, 31 N. E. [2d], 224), that section is not helpful in determining the rights in the deposits of the obligees as between themselves.
Where there is no evidence as to the ownership of the money deposited in such accounts, there may be some justification for indulging the presumption that the depositors have an equal interest in the amounts of such deposits. However, in the instant case, it is conceded that the money deposited in these two accounts belonged to the wife before the deposits were made. If the husband is entitled to any part of the amounts of those deposits, some part of the money or of the obligation of the bank to pay back the amount of that money so deposited must have passed somehow from the wife to the husband. See annotations, 48 A. L. R., 189, 190; 66 A. L. R., 881, 882; 103 A. L. R., 1123; 135 A. L. R., 993; 149 A. L. R., 879.
The husband certainly can not claim that anything was transferred to him for a valuable consideration. Nothing in the record supports a conclusion that the husband incurred any detriment or that there was any *276 bargain under which the wife was to receive any benefit from the husband which could represent such a consideration. Likewise there was no transfer in the requisite form to constitute a valid bequest. Furthermore, since the wife until her death retained a complete power to withdraw all or any part of the money deposited in the account, there was apparently no relinquishment by the wife of dominion and control over the money deposited or over the obligation of the bank to pay back to her the whole amount of that money. It does not appear that the wife had relinquished such dominion and control over the deposits by delivery to the husband of any passbooks, the presentation of which would be necessary to effect withdrawals. Cf. Volley et al., Admrs., v. Hicks, 58 Ohio St., 218, 50 N. E., 809, 41 L. R. A., 858. Hence, an essential element of a gift or assignment without consideration was lacking. See Gano v. Fisk, 43 Ohio St., 462, 3 N. E., 532, 54 Am. Rep., 819, and Flanders v. Blandy, 45 Ohio St., 108, 12 N. E., 321. As hereinbefore observed, these deposits were not payable to the wife and the husband but were payable to the wife or the husband. In the former instance, it would be arguable that neither the husband nor the wife could withdraw funds without the concurrence of the other and that, therefore, the wife would have relinquished at least part of her dominion and control over the deposits. Cf. In re Estate of Hutchison, 120 Ohio St., 542, 166 N. E., 687.
However, in Cleveland Trust Co. v. Scobie, Admr., 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182, this court held that, where one with his own money opened a bank account payable either (a) to such one or (b) to another or (c) to the survivor, such other could, on the death of the one opening the account, be entitled Lo the whole of the account. The reason given for that decision was that the one opening the account acquired, in consideration of payment of the money de *277 posited, a promise by the bank to pay the amount deposited either (a) to the depositor or (b) to the other named party or (c) to the survivor. This promise to pay to the survivor, on the death of either of the alternative living obligees, was held to create in each obligee a contractual right to the amount of the deposit if such obligee became the survivor of the obligees. When the one opening the account died, the survivor then would have such a contractual right which would no longer be contingent upon such survival and no longer subject to the extinguishment which would necessarily result from an exercise by the one opening the account of his right to withdraw the whole of the amount deposited.
It may be observed that the obligation to pay the survivor would in such a ease be inconsistent with any obligation to pay the one of the two alternative obligees who had died or to pay the executor or administrator of such one. Therefore, the contract involved in the Scobie case could, on the death of one of the two alternative obligees, be only a contract to pay the surviving obligee. Without disregarding the words of the contract, it could not possibly be construed as a contract to pay either the surviving obligee or the personal representative of the deceased obligee. In the instant case, there was no express promise to pay the surviving obligee. There was, therefore, nothing which would be inconsistent with a continuing obligation to pay either (a) the personal representative of the deceased wife or (b) the surviving husband. The contractual right of the wife to payment, even if an alternative right, would represent a chose in action which could pass to her personal representative, i. e., her administrator. Unlike in the Scobie case and similar cases, there were no contractual provisions which would necessarily require a conclusion that her right had been extinguished by her death.
*278 Therefore, in the instant case, the rights of the husband in these accounts could be no greater after the death of the wife than they were before her death. It is even arguable that they terminated on her death. See Smith v. Planters Savings Bank, 124 S. C., 100, 117 S. E., 312; Bolton v. Bolton, 306 Ill., 473, 138 N. E., 1568; 33 Yale Law Journal, 93. Before the deposit, the money deposited admittedly belonged to the wife. When she exchanged that money for the obligation of the bank to pay its amount either to her or to her husband, there was, as hereinbefore pointed out, no transfer for a consideration, or gift, or assignment by way of gift, to her husband. Until her death, the wife retained a right to withdraw all the money deposited. Certainly, as to amounts not withdrawn from the account by the husband before her death, there is no theory which can support a conclusion that the husband acquired any property interest either in the money deposited or in the obligation of the bank to pay its amount. This conclusion is fully supported by the decisions of this court in Bender v. Cleveland Trust Co., 123 Ohio St., 588, 176 N. E., 452; Union Properties, Inc., v. Cleveland Trust Co., supra; and Nichols v. Metropolitan Life Ins. Co., supra.
The cases of Oleff, Admr., v. Hodapp, Gdn., 129 Ohio St., 432, 195 N. E., 838, 98 A. L. R., 764, Sage, Exr., v. Flueck, 132 Ohio St., 377, 7 N. E. (2d), 802, Berberick v. Courtade, 137 Ohio St., 297, 28 N. E. (2d), 636, and Rhorbacker, Exr., v. Citizens Bldg. Assn. Co., 138 Ohio St., 273, 34 N. E. (2d), 751, 135 A. L. R., 988, like the Scobie case, each involved the rights of a surviving obligee in an account payable to such obligee or another or the survivor. Likewise, in In re Estate of Fulk, 136 Ohio St., 233, 24 N. E. (2d), 1020, such rights were involved in an account which this court held was, on the evidence in that case, an account payable to one or another or the survivor. There is no evidence or *279 contention in the instant case which would support a conclusion that either the husband or the wife intended either of these to be such an account, even if we assume that parol evidence could be considered to establish such a conclusion.
Our conclusion is that the husband acquired no property rights in these accounts. It follows that the judgment of the Court of Appeals must be reversed and final judgment must be rendered for the plaintiff.

Judgment reversed and final judgment for plaintiff.

Weygandt, C. J., Middleton, Hart and Lamneck, JJ., concur.