SHIPMAN, EXR., APPELLANT, v. HANCE, APPELLEE.

(No. 561—Decided June 19, 1959.)

*Messrs. Shipman & Utrecht,* for appellant.
*Mr. Baird Broomhall,* for appellee.

CRAWFORD, J.   Plaintiff, appellant herein, Franklin L. Shipman, executor of the estate of Lucy M. Stoltz, deceased, brought suit in the Court of Common Pleas to set aside a joint and survivorship contract between defendant, appellee herein, and deceased and The Peoples Building & Savings Association of Troy, Ohio, for the declaration of a trust and for an accounting for moneys withdrawn by defendant from the account in such association.

Trial was had in the Court of Common Pleas, which dismissed the petition.   From this judgment of dismissal plaintiff appeals on questions of law.

The bill of exceptions consists of a stipulation that certain exhibits designated A through F, inclusive, shall be received

as the evidence in the case. These exhibits are as follows: A and B are transcripts of evidence taken before the Probate Court on October 30, 1956, and February 28, 1957, upon a complaint of plaintiff that defendant had concealed assets of the estate; C and D are the decision and judgment entry in the Probate Court, denying the relief sought by the plaintiff; and E and F are the joint and survivorship agreement and the corresponding building and savings stock subscription card, both of which are signed by defendant and plaintiff's decedent.

The following facts appear from the record:

The decedent, Lucy M. Stoltz, was the daughter of defendant, Dora A. Hance. Lucy M. Stoltz was, in her lifetime, the owner of a running stock account in the association, which account had been in her name alone since January 1952, at which time the balance amounted to $18,280.04.

On June 1, 1956, Lucy M. Stoltz entered the Dettmer Hospital where she underwent surgery on June 6 and from which she was released on July 28. On August 4, 1956, she re-entered the hospital where she died on August 12, 1956.

On June 15, 1956, decedent and defendant signed a joint and survivorship contract (exhibit E) with respect to decedent's pre-existing account, the balance of which was then $17,409.43, and on or about June 30, 1956, both signed a subscription for stock (exhibit F) in connection with the same account.

On June 30, July 6 and July 23, 1956, defendant withdrew certain sums totalling $857.28, on July 24, 1956, she withdrew $12,000, and on August 3, 1956, she withdrew the remaining balance of $4,552.15. Except for sums paid out for decedent's expenses, defendant retains and claims the rest as her own property.

The Probate Court found that plaintiff had failed to prove concealment of assets, and that the Probate Court was without jurisdiction to adjudicate rights under the joint and survivorship contract, and dismissed the complaint of plaintiff executor (exhibits C and D).

Subsequently, in the Common Pleas Court in the cause now before us, defendant filed a motion for judgment on the pleadings, claiming that the judgment of the Probate Court rendered the matter *res judicata*. The Court of Common Pleas properly

overruled this motion, agreeing with the Probate Court that the latter was without jurisdiction completely to adjudicate the matter, so that the present case is not *res judicata*.

Plaintiff argues two assignments of error:

1. That the judgment of the Common Pleas Court is contrary to law.

2. That the judgment is not sustained by sufficient evidence and is against the weight of the evidence.

Consideration of the first assignment requires careful examination of exhibit E, entitled "Joint and Survivor *Contract*" and which reads as follows:

"The Peoples Building & Savings Association of Troy, Ohio
"Joint and Survivor Contract
"The undersigned, joint owners
of
running stock—paid up stock

"No. 35525 in The Peoples Building & Savings Association of Troy, Ohio, hereby agree that the money, or any part thereof, deposited to our credit on said stock shall at all times be payable to the order of any one or more of the undersigned joint owners or depositors, and further agree that said deposit shall continue to be so payable, notwithstanding the death or incapacity of any one or more of us, and we hereby authorize said association to permit withdrawals in accordance with this agreement.

"For the purpose of carrying this into effect, each of the signers hereby transfers to the other or others, a present equal undivided interest in this account, and all additions thereto, for our respective lives.

"We further agree that no recovery shall be had against said association by any of the undersigned for any sums of money paid out to any of us and charged on or against said stock account.

"Dated this 15 day of             June,     1956.
"Executed in the
presence of           [s]   Lucy Stoltz
                                  Casstown, Ohio
                       [s]   Dora A. Hance"

Among the authorities cited by the plaintiff is the early case of *In re Estate of Morgan*, 28 C. C. (N. S.), 222, 30 C. D., 101. There the decedent mother, Ellen Morgan, had, in the presence of her daughter, instructed the bank to change her account into a joint and survivor form in the names of her daughter and herself. It was held that this was not a gift *inter vivos* or a testamentary disposition, and that payment made under such arrangement did not determine title.

Whatever may be said as to the force of that case as a present authority in the light of subsequent decisions of the Supreme Court, it is to be observed that the opinion is silent as to any contract between the decedent and the daughter. There is also lack of evidence of such a contract in other cases cited by the plaintiff. See, for example, *Held, Admr.*, v. *Myers*, 48 Ohio App., 131, 192 N. E., 540, with reference to which counsel claims there was ''almost the same set of facts as in the case at bar.''

It is now well established that by the contract in the present case the defendant acquired a present vested interest in the account. See *In re Estate of Hutchison*, 120 Ohio St., 542, 166 N. E., 687; *Oleff, Admr.*, v. *Hodapp, Gdn.*, 129 Ohio St., 432, 195 N. E., 838, 98 A. L. R., 764; *In re Estate of Hatch*, 154 Ohio St., 149, 93 N. E. (2d), 585 (holding that one who has by contract changed his account to the joint and survivorship form cannot thereafter direct special disposition of the fund by the survivor); *In re Estate of Williams*, 73 Ohio Law Abs., 441, 138 N. E. (2d), 189.

*Rhorbacker, Exr.*, v. *Citizens Building Assn. Co.*, 138 Ohio St., 273, 34 N. E. (2d), 751, has gone one step further, holding that when a financial institution follows instructions of a depositor in placing a deposit in joint and survivorship form, there is a contract between the institution and the depositor, enforceable by the survivor as owner.

The Court of Appeals for Lucas County, in *In re Estate of Voegeli*, 108 Ohio App., 371, observed:

''Prior to *Rhorbacker, Exr.*, v. *Citizens Bldg. Assn. Co.* (1941), *supra* (138 Ohio St., 273), it had been held that a joint bank deposit payable to the survivor did not amount to a testamentary disposition in case of death of the depositor on the

theory that *at the inception of the deposit a contract was entered into between two persons (depositor and codepositor) to whom the deposit was made payable.* But in the *Rhorbacker case* the court proceeded to base its decision upon the *contract of deposit between the building association and the depositor* alone and further held that, since the transaction possesses some of the characteristics of a third party beneficiary contract, consideration passing between the depositor and the one surviving is not necessary, and full assent to the contract by such survivor may be presumed, the contract being one of advantage without burden. This principle was affirmed in an opinion written by the dissenting member of the court in the *Rhorbacker case,* in *In re Estate of DiSanto,* 142 Ohio St., 223, 51 N. E. (2d), 639.''

See *In re Estate of Voegeli,* 169 Ohio St., 237, 158 N. E. (2d), 893, wherein our Supreme Court dismissed an appeal from the judgment of the Court of Appeals just referred to.

That Court of Appeals observed further:

''* * * Notwithstanding Section 1105.09, Revised Code, may have been enacted for the protection of the bank, it provides in no uncertain terms that when a deposit is made in the name of two or more persons, payable to either or the survivor, such deposit or any part thereof may be paid to either of said persons, whether the other is living or not. It therefore seems to us that the section imports that the interest of the codepositor shall vest at the time the deposit is made and authorizes the bank to make payment on demand to either depositor, whether the other be living or dead. At least, it is a statutory recognition of the right of either depositor to receive payment of a part or the whole of such deposit during life and the right of the survivor to the deposit upon the death of the other. * * *

''* * * Since title to the deposit passes to the bank and a debtor-creditor relationship is created, the depositor is enabled to so contract with the bank that another be vested with a present interest in the debt that will, unless cancelled or revoked by the depositor and the codepositor, survive the death of the depositor, and the relationship between the depositor and the survivor is not controlling.''

Vested rights having been created by contract between the decedent and defendant or by contract between the decedent

and the financial institution or by contract among all three, the act of the defendant in withdrawing the deposit and obtaining possession of the fund during the lifetime of the decedent could in nowise diminish defendant's vested interest. Upon the death of Lucy M. Stoltz, the money being already in the hands of Dora A. Hance as surviving owner, the contracts were fully executed. Any question of the rights of Lucy M. Stoltz, while living, in the funds withdrawn is not before us.

Upon the authorities cited above, and from the facts noted which bring this case within their scope, we do not find that the judgment is contrary to law as contended in the first assignment of error.

The second assignment raises the question of the sufficiency of the evidence.

When an account is placed in joint and survivorship form, evidence is frequently received as to the circumstances and the intent of the parties in order to determine the true nature of the contract. *In re Estate of Hatch, supra* (154 Ohio St., 149); *Held* v. *Myers, supra* (48 Ohio App., 131); *Keyt, Exr.,* v. *Mitchell,* 106 Ohio App., 149, 153 N. E. (2d), 690.

Plaintiff emphasizes the testimony of Herbert N. Ross, secretary of the association, who said that Mrs. Hance called at his house one evening "in regard to what could be done. She stated that Lucy was in a bad condition. * * * She told me that she wanted to be able to draw on the account if she needed money to pay on Lucy's bills." He testified further:

"Q. And then so you suggested a joint and survivorship account for that purpose? A. Yes. I did that myself. I suggested that they have a joint contract signed by Lucy, so that she, that is Mrs. Hance, could transact business on the account.

"Q. Mrs. Hance herself did not suggest that joint and survivorship account, did she? A. No, sir. She just called to see what could be done and it was our suggestion.

"Q. Did you have further conversation with her about it? A. No, sir."

Ross was not asked why he suggested a joint and survivorship form of account rather than some other method of merely authorizing Mrs. Hance to make withdrawals.

Plaintiff also emphasizes some answers given by Mrs.

Hance upon cross-examination in response to questions framed by plaintiff's counsel, which would indicate that the sole purpose of changing the account was to enable her to withdraw money to pay her daughter's bills.

However, the examination proceeded in such manner that the Probate Court held that plaintiff had waived the disqualification of Mrs. Hance as a witness, she being a party adverse to an executor, under the so-called "dead man's statute," Section 2317.03, Revised Code. This ruling is not challenged. She testified fully as to her dealings and conversations with her daughter, the decedent, regarding the changing of the account to the joint and survivorship form.

This testimony, if accepted by the court as true, could leave little doubt that it was the intention of the daughter that defendant should not only transact business for her but should also have the remainder of the money in the account for her own.

The evidence amply shows that the daughter was mentally competent when she expressed such intention and when she signed the joint and survivorship contract and the stock subscription.

The testimony was also sufficient, if accepted as true, to overcome any presumption of undue influence which might arise because of the confidential relationship existing between mother and daughter. And the Court of Common Pleas so found, applying the principles declared in *McAdams* v. *McAdams,* 80 Ohio St., 232, 88 N. E., 542.

Various arguments as to decedent's intention are based upon the provisions in her will for a trust for the benefit of her parents and the ultimate disposition of the remaining corpus for charitable purposes (the father is now deceased). But, whatever may be its significance, the will is not in evidence.

The Court of Common Pleas having weighed the evidence, which is adequate to support the judgment, this court must accept its conclusions.

The judgment is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and KERNS, J., concur.